THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GEORGE BENNETT and MARTHA BENNETT, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CASE NO. C16-0091-JCC<br><br>ORDER |

This matter comes before the Court on the motion for partial summary judgment by Defendant the United States of America (Dkt. No. 15). Having thoroughly considered the motion and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

## I. BACKGROUND

On November 1, 2013, Plaintiff George Bennett's vehicle collided with a government vehicle driven by a Homeland Security Investigations agent. (Dkt. No. 16-1 at 4.) Plaintiffs allege that the collision was negligently caused by the government agent and that, as a result, Bennett incurred "medical costs of about $100,000." (Dkt. No. 1 at 4-5.)

According to the United States, Plaintiffs have identified two categories of injuries that allegedly resulted from the collision: (1) aggravation of Bennett's pre-existing neck injury,

ORDER
PAGE - 1

which required surgery in April 2015, and (2) gallstone pancreatitis, which was caused by a coughing fit, which in turn was caused by dysphagia (difficulty swallowing) Bennett developed after the surgery. (Dkt. No. 15 at 1-2.)

The United States moved for partial summary judgment, arguing that Plaintiffs fail to show that any action by the United States was the proximate cause of Bennett's gallstone pancreatitis. (*Id.* at 2.) Plaintiffs did not respond to the motion.

## II. DISCUSSION

### A. Summary Judgment Standard

The Court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248-49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B. Causation

To establish a cause of action for negligence, a plaintiff must demonstrate that (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) damages resulted, and (4) the defendant's breach proximately caused the damages. *Tincani v. Inland Empire Zoological Soc'y*, 875 P.2d 621, 624 (Wash. 1994). Washington law recognizes two elements of

ORDER
PAGE - 2

proximate cause: cause-in-fact and legal causation. *Hartley v. State*, 698 P.2d 77, 82 (Wash. 1985). "Cause in fact refers to the 'but for' consequences of an act—the physical connection between an act and an injury." *Id.* at 83. Cause-in-fact is a question for the trier of fact unless "but one reasonable conclusion is possible." *Id.* Legal causation is a question of law that asks whether, as a matter of policy, a defendant's act should give rise to liability. *Id.*

To establish causation, medical testimony must be sufficiently definite to establish that the defendant's act "probably" or "more likely than not" caused the plaintiff's injuries. *O'Donoghue v. Riggs*, 440 P.2d 823, 830 (Wash. 1968). The opinion must not be speculative or conclusory and it must have adequate foundation. *Safeco Ins. v. McGrath*, 817 P.2d 861, 865 (Wash. Ct. App. 1991).

**C.     Expert Testimony**

Moreover, under Federal Rule of Evidence 702, an expert witness must be qualified by "knowledge, skill, experience, training, or education," and may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." This "knowledge" must be based on "more than subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993). Under this rule, the Court assesses "whether the reasoning or methodology underlying the testimony is scientifically valid [and] whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93.

**D.     Analysis**

Because Plaintiffs did not respond to the motion, they did not present any evidence of a link between the collision and Bennett's gallstone pancreatitis.

The evidence presented by the United States, even viewed in a light most favorable to Plaintiffs, makes only a threadbare connection. The evidence shows that, after the April 2015 surgery, Bennett had "dysfunctional swallowing." (Dkt. No. 16-4 at 10, 17.) It also shows that,

on the night before he presented with gallstone pancreatitis, Bennett choked on some food, which caused a coughing fit. (Dkt. No. 16-4 at 10.) Based on this information alone, Dr. John Hruby, M.D. opined that, "on a more than not probable basis," Bennett's difficulty swallowing caused his gallstone pancreatitis (*Id.* at 9.) As support, Dr. Hruby stated that the "described episode of significant choking and coughing the night before the onset of his abdominal pain with pancreatitis could *conceivably* have caused sufficient intra-abdominal pressure to contract the gallbladder and propel a gallstone down the biliary tract." (*Id.*) (emphasis added.)

The United States argues that Dr. Hruby's opinion is insufficient to establish causation. The Court agrees. Dr. Hruby himself admits he was unable to find any medical literature confirming this causal relationship or any reports of this diagnosis having been made before. (Dkt. No. 16-4 at 6.) This lack of supporting literature is confirmed by the United States' expert, who is "unaware of any medical literature, research, peer-reviewed, or even anecdotal reports of such causation." (Dkt. No. 17 at 5.) Rather, Dr. Hruby's opinion is based on his general understanding of physics and anatomy, which led him to hypothesize that the coughing fit *could* have been the root cause of the pancreatitis. (Dkt. No. 16-4 at 6.) This is insufficient for the Court to conclude that Dr. Hruby's conclusion goes beyond speculation or that he reached his conclusion via reliable methodology.

Moreover, it appears that Dr. Hruby's opinion—or at least his level of certainty—was developed for purposes of this litigation. This is an important factor in the Court's analysis. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying."). Dr. Hruby was not Bennett's treating physician when he was admitted to the hospital with gallstone pancreatitis. (*See* Dkt. No. 16-5 at 2.) Instead, a month later, Bennett's wife wondered to Dr. Hruby if the choking episode could have caused the pancreatitis. (*See* Dkt. No. 16-4 at 10.) At

that time, Dr. Hruby "suspect[ed] by [Bennett's] history that [the] episode of coughing *may have* precipitated passage of [the] biliary stone leading to his hospitalization." (*Id.* at 12) (emphasis added). Plaintiffs' counsel subsequently asked Dr. Hruby if he would "feel comfortable in making the statement that more likely than not a coughing spell such as the one [Bennett] experienced could cause the pancreatitis?" (*Id.* at 17.) In response, Dr. Hruby opined that "on a more than not probable basis," Bennett's choking fit caused him to develop gallstone pancreatitis. (*Id.* at 9.) Although he used this language as to his level of certainty, Dr. Hruby explained his opinion simply by stating that the choking fit "could conceivably have caused" the pancreatitis. (*Id.*) In other words, Dr. Hruby determined only that this scenario was *possible* prior to counsel's request; it was not until he was asked to testify that he qualified his opinion with the requisite level of probability.

### III. CONCLUSION

In sum, the Court finds insufficient evidence of causation for Plaintiffs to maintain this claim. The United States' motion for partial summary judgment (Dkt. No. 15) is GRANTED. To the extent Plaintiffs seek to recover damages associated with Bennett's gallstone pancreatitis, that claim is DISMISSED with prejudice.

DATED this 6th day of June, 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE